## HENRY C. REGISTER, Appellant, v. PRATHER ELDER and WILLIAM L. REGISTER.

### Division One, November 30, 1910.

1. **WILL: Curtesy Excluded: Devise to Trustee.** A will which devises land to a trustee, the income therefrom to be the sole and separate property of a married daughter, and in case of her husband's death prior to her death then to her absolutely, and in case of her death prior to his, then to her children absolutely, bars the husband, upon her death leaving children surviving, of any right to curtesy in the land. The contingency upon which the title was to vest in her was that she survive her husband, and that contingency never happened, therefore the title never vested in her, and hence her husband has no curtesy therein.

2. ————: ————: ————: **"Turned Over" In the Sense of Devise: Noscitur A Sociis.** The will gave the land to a trustee and provided that in case of the death of a daughter he should use the income to support and educate her children until the youngest reached legal age, "at which time said real estate shall be turned over by said trustee to such child or children, share and share alike, to have and to hold unto them, their heirs and assigns forever." *Held,* that little stress is to be attached to the isolated words "turned over" taken by themselves, but they are to be taken with the succeeding words with which they are associated, namely, "to have and to hold, unto them, their heirs and assigns forever," and when so considered they are to be understood as vesting the fee-simple title in the children upon the happening of the named contingency, namely, the death of their mother, and as then terminating the trust.

3. ————: ————: **Life Estate in Wife.** Curtesy cannot be carved out of a life estate in the wife, whether it be legal or equitable. So that where the will gave the wife an equitable life

estate, and provided that the trust should terminate and the entire estate vest in her only in case she survived her husband, he can have no curtesy upon her death.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman,* Judge.

AFFIRMED.

*James W. Boyd* for appellant.

(1) The husband's right of curtesy adheres in and to the lands belonging to the deceased wife at the time of her death, whether she held the title to the lands in her own name, or whether the title was held in the name of a trustee for her use and benefit, if the other requisites exist; and in this case it is admitted that they did and do exist. Tremmel v. Kleiboldt, 75 Mo. 255; Tremmel v. Kleiboldt, 6 Mo. App. 549; McTigue v. McTigue, 116 Mo. 138; Kennedy v. Koopman, 166 Mo. 87; Myers v. Handsborough, 202 Mo. 495; Donovan v. Boyd, 215 Mo. 149. (2) The right of curtesy is favored in law and the husband will not be deprived thereof by anything in the devise to his wife short of an explicit exclusion, or words which are so clear and forceful as to leave no doubt as to the exclusion. Woodward v. Woodward, 148 Mo. 247; 4 Am. and Eng. Ency. Law, p. 465; McTigue v. McTigue, 116 Mo. 143; Kennedy v. Koopman, 166 Mo. 87; Soltan v. Soltan, 93 Mo. 307; McBreen v. McBreen, 154 Mo. 332; Cushing v. Blake, 30 N. J. Eq. 687. (3) A clause in a will based upon a contingency which never arose, and which can never arise, is void, or it lapses. Such a clause in a will cannot by any rule of law, or canon of construction, be held to affect in any wise lands plainly, expressly and clearly devised to a married woman. 1 Underhill on Wills (1900 Ed.), pp. 646-8. In this case, the testator, after devising these lands in suit to Leonard in trust for Mrs. Register, added three

clauses, each based upon a contingency which never arose and never can arise.

*Charles F. Strop* and *Eugene Silverman* for respondents.

(1) The intention of the testator is to be gathered from the entire instrument. A life estate may be created by express words or by implication from the provisions of the will as a whole. Walton v. Drumtra, 152 Mo. 507; Cross v. Hoch, 149 Mo. 325; Walton v. Ketchum, 147 Mo. 209. (2) The will gave appellant's deceased wife a life estate only and curtesy does not attach to a life estate. Spencer v. O'Neill, 100 Mo. 49; Phillips v. Laforge, 89 Mo. 72; Burris v. Page, 12 Mo. 359; Janney v. Sprigg, 48 Am. Dec. (Md.) 559; Adams v. Ross, 30 N. J. L. 508; Beecher v. Hicks, 7 Lea (Tenn.) 207; Alexander v. Mill, 7 Heisk. (Tenn.) 81; Bigley v. Watson, 38 L. R. A. 679; 12 Cyc. 1013; 4 Kent's Com. 33. (3) The fact that appellant's wife would have received the fee had she survived appellant does not enlarge her estate, that event not having occurred. "Nor does it change the character of a life estate so long as it remains such that it may upon the happening of a contingency become enlarged into a fee." 1 Washburn, Real Prop. (5 Ed.), p. 121; Grover v. Trueblood, 1 S. E. 918. Even a power of sale attached to a life estate will not enlarge the estate into a fee. Grace v. Perry, 197 Mo. 562; Russell v. Eubanks, 84 Mo. 82; Harbison v. James, 90 Mo. 411; Lewis v. Pitman, 101 Mo. 281; Greffet v. Willman, 114 Mo. 106; Evans v. Folks, 135 Mo. 397. (4) A life estate in realty is a proper subject for the creation of a trust. 28 Am. and Eng. Ency. Law (2 Ed.), 914; Speed v. Railroad, 163 Mo. 111; In re Chisholm, Fed. Cas. No. 2867; Nelson v. Davis, 35 Ind. 474; Zuver v. Lyons, 40 Ia. 510; Handy v. McKim, 64 Md. 560; Lerned v. Saltonstall, 114 Mass. 407; Osborne v. Soley, 81 Pa. St. 312; Lindsey v. Eckels, 40 S. E. 23. (5)

Since the wife of appellant took but a life estate there could be no curtesy. But even if there was doubt as to the nature of her estate (which respondent denies) yet the whole will shows a clear and unambiguous intention to exclude curtesy. No particular words are necessary to exclude curtesy. Any words which clearly show such intention are sufficient. Cases cited by appellant fully sustain this contention.

LAMM, P. J.—Ejectment on formal pleadings. Cast below on a trial to the court, without a jury, plaintiff appeals. Defendants asked no instructions—plaintiff, one (refused) to the effect that, under the law, the pleadings and the agreed statement of facts, he was entitled to judgment.

In small compass, preserving the substance of an agreed statement of facts, the case made is this: Plaintiff is the father of defendant William L.—the latter being the only surviving child of plaintiff and his wife, Martha Jane. William L. is in possession of the land in dispute, viz., the southeast quarter of section 10 and the west half of the southwest quarter of section 11, all in township 56, range 35, in Buchanan county, through his codefendant, Elder, as tenant. One John Montgomery died testate, seized of the land as owner, in June, 1903, leaving an only child, to-wit, said Martha Jane—his will disposing of the land. This will and its codicil were probated in common as well as solemn form. Martha Jane dying, thereafter the son, then aged 36 years, took possession, putting his right thereto upon the terms of his said grandfather's will. Thereat plaintiff brought ejectment on the theory he was tenant by the curtesy as surviving husband of Martha Jane, and as such had the *jus possessionis.*

The controversy hinges on the judicial interpretation of the will—the material clause being item 3, viz.:

"Item 3. I give, devise and bequeath to my said executor, John L. Leonard, the following described real

estate, situate in the county of Buchanan and State of Missouri, to wit:'' (Here follows the land above described.) ''containing two hundred and forty acres, more or less, and two thousand dollars in cash, to have and to hold unto him and his successors in trust for my daughter, Martha Jane Register, wife of H. C. Register. The two thousand dollars shall be paid by my said executor to my said daughter in monthly installments not exceeding eighty dollars per month, for her support during the period covered by the administration of my said estate. The income from the real estate above described shall be paid by said executor and trustee in monthly installments for the support of my said daughter, and her child or children, said money when paid to her to be her sole and separate property, free from control or interference of her said husband, H. C. Register, but in case my said daughter survives her said husband, then said real estate and said money, if any in the hands of said trustee, shall immediately vest in her absolutely, to have and to hold unto her, her heirs, and assigns, forever, and in case my said daughter shall die leaving surviving her any child or children of her body, then the trustee shall use the income from the real estate aforesaid and money on hand, if any, derived from said real estate, and said two thousand dollars aforesaid, to support, educate and maintain the child or children of my said daughter surviving her, until the youngest child, if a boy, arrives at the age of twenty-one years, and, if a girl, arrives at the age of eighteen years, at which time said real estate and property shall be turned over by said trustee to such child or children share and share alike, to have and to hold unto them, their heirs and assigns forever, but in the case my said daughter should die leaving no child or children, or their descendants surviving her, then said property shall go to my brothers and sisters and nephews and nieces herein named, to-wit: Samuel Montgomery, one part; Thomas Montgomery, one

part; and the children of David C. Montgomery, one part; and Sarah Knox, one part; and in case of the death of either my said brothers or sisters, the heirs of said deceased brother or sister shall take the part that the sister or brother would be entitled to, if living, to have and to hold unto them, their heirs and assigns forever.''

After bequeathing five hundred dollars each to his brothers, Samuel and Thomas, and five hundred dollars each to his nieces, Georgia and Ellen, and to a friend, Isaiah McVey, and ten thousand dollars to William Jewell College, to educate young men for the ministry and for the use of foreign missions in spreading the Gospel, by items from 4 to 9 inclusive, item 10, which was annulled by the codicil, serves an office in outlining testator's plan. It reads:

''Item 10. All the rest and residue of my property, real, mixed and personal, wherever situate, I give and bequeath and devise to my said executor, to him and his successors in this trust, to have and to hold in trust for my said daughter, Martha Jane Register, the income to be paid to her as her sole and separate property, free from the control of her said husband, H. C. Register, in installments, for the support of herself and child or children, but in case my said daughter's said husband, H. C. Register, shall die leaving her surviving him, then said property, real, personal and mixed, shall immediately vest in her to have and to hold unto her, her heirs and assigns forever, and in case my said daughter shall die before her said husband, leaving surviving her a child or children, then my said executor and trustee shall use the income derived from said property, or such portion thereof as may be necessary to educate, support and maintain said child or children until the youngest child shall arrive, if a boy, at the age of twenty-one years, and, if a girl, at the age of eighteen years, when such child or children shall have said property, share and share

alike, but in case my said daughter shall die leaving no
child or children, or their descendants, surviving her,
then my said property shall go to my brothers and sis-
ters, nephews and nieces hereinbefore referred to in
Item Three of this will, share and share alike, except
that the nephews and nieces shall take only such part
of said property as is provided for in said Item Three
aforesaid, and in case either of my said brothers or sis-
ters hereinbefore named shall decease, then the share
that he or she would have taken under this will, if liv-
ing, shall go to his or her heirs, to have and to hold
unto them, their heirs and assigns forever.''

Item 11 empowers the executors to sell all real es-
tate necessary to pay debts and bequests, ''except the
two hundred and forty acres described in item
three . . .''

The concluding items are 12 and 13, viz.:

''Item 12. After the settlement of my estate, and
the payment of my just debts, and the bequests herein
provided for, my said executor is to hold all the prop-
erty herein devised to him for the use of my said
daughter in trust, free from the control of her said
husband, and all moneys herein provided to be paid to
my said daughter shall be paid to her as her sole and
separate property.

''Item 13. It is my will, and my executor is direct-
ed to employ Judge Henry M. Ramey, or in case he is
unable to act, Henry M. Ramey, Jr., as his attorney for
said estate, and in executing and carrying out the trust
herein created, and to employ no other attorney ex-
cept upon the advice of Judge Ramey or Henry M.
Ramey, Jr., aforesaid.''

The codicil annulled items 10 and 12 and made his
niece, his adopted daughter, Georgia Montgomery, re-
siduary legatee. It gave instructions as to the specific
property he desired not sold to pay debts and legacies,
unless absolutely necessary after exhausting all other
real estate and personal property, winding up by ex-

cepting from the power of sale "the two hundred and forty acres given to my executor for the use of my said daughter, Martha Jane Register."

The question is: Had plaintiff curtesy under the will? Being without doubt, and therefore of one accord, we all agree the case was well decided below. This, because:

It being to the interest of the State that the wills of its citizens should be given effect, where they do not contravene the law, the great maxim, the cardinal judicial and statutory rule of interpreting wills, is to seek and get at the intent of the testator and enforce the will in accordance with that intent. To this end all the words and the whole scheme of the will are to be given effect as viewed from the standpoint of the testator, as near as may be. That Mr. Montgomery intended to exclude his son-in-law, the plaintiff, from his marital right of curtesy, we think is writ large in his will from end to end. Thus he did not devise the land to his daughter, but to a trustee, the trust being not alone for her benefit but for that of her children on a given contingency. Having created not a dry but an active trust and invested the trustee with the legal title and charged him with duties and powers, testator further provided that his daughter, one of the beneficiaries, the principal one in the trust scheme, in a named contingency (and only in that) should take the whole title and estate. That contingency was that her husband, the plaintiff in this suit, should die first, thereby (in such event) obviously precluding all possibility of curtesy in his then son-in-law.

Pursuing our search for the intent of testator, we find it to be that the testamentary scheme was that at the outset she (his daughter) was given an equitable estate not of inheritance but for life, subject, however, to be enlarged into an estate of inheritance upon the happening of the contingency just mentioned. Witness the will. Its language is: ". . . but in case my said

daughter survives her said husband, then said real
estate and said money, if any, in the hands of the said
trustee, shall immediately vest in her absolutely, to
have and to hold unto her, her heirs and assigns forever
. . .'' The happening of that contingency was a
condition precedent to an estate of inheritance vesting
in her. Otherwise it has no office. The contingency
never happened; the daughter died before her husband;
therefore she never became vested with a title to the
trust estate (borrowing the words of the will) "abso-
lutely, to have and to hold unto her, her heirs, and as-
signs forever."

If the will had first given the whole estate to the
daughter subject to be cut down to a lesser estate by
a contingency that never happened, or if it was sought
to cut a full estate, once plainly granted her by the
will, down to a lesser one by words of mere inference
of doubtful import, then we would have a different case
to deal with.

The next contingency by which the course of the
estate is directed was this: "And in case my said daugh-
ter shall die, leaving surviving her any child or children
of her body, then the trustee shall use the income from
the real estate aforesaid and money on hand, if any,
derived from said real estate, and said two thousand
dollars aforesaid, to support, educate and maintain the
child or children of my said daughter surviving her,
until the youngest child, if a boy, arrives at the age of
twenty-one years, and if a girl, arrives at the age of
eighteen years, at which time said real estate and
property shall be turned over by said trustee to said
child or children, share and share alike, to have and
to hold unto them, their heirs and assigns for
ever; . . . ''

Dying without her equitable estate having been
enlarged into a fee by the happening of the contin-
gency that her husband should die before her, we see
that the unmistakable intendment of the testator by

the second contingency, which did happen, was that the trust should. continue, if there were minor children, during the minority of any child or children, and all the children were to be supported, educated and maintained out of the income of the estate until the youngest child became of age, when the estate was to be "turned over by said trustee to such child or children, share and share alike, to have and to hold unto them, their heirs and assigns forever." We lay little stress on the isolated and loose phrase, "turned over," taken by itself. As shown by the associated words, viz., "to have and to hold unto them, their heirs, and assigns forever" (the same words testator had used in connection with the vesting in the wife of the estate absolutely on the happening of the contingency that her husband died first), its meaning must be taken to be, under the doctrine of *noscitur a sociis*, a vesting in them of a fee simple title. The fact that the trust executed itself upon the happening of one or the other of these contingencies, without the necessity of a formal conveyance by the trustee, does not militate at all against such view. In this view of it, the son, the only surviving child, William L., then an adult, took title under the will of his grandfather as a purchaser and not as an heir of his mother.

There was yet another contingency on the happening of which the course of this estate was directed in another channel, namely, if Mrs. Register died leaving no child or children then the estate passed to collateral kindred, named, viz., testator's (not Mrs. Register's) nieces and nephews, brothers and sisters.

In the very nature of things one or the other of these contingencies was bound to happen and cast the estate by descent at once upon the death of Mrs. Register, viz., either (a) Mr. Register would die first, in which event the fee simple title vested in Mrs. Register and would descend to her heirs; or (b) she would die first leaving children, in which event the income for

a stated period was to be devoted to the children and the trust was to continue during the minority of the youngest child, subject to be executed and the title vested under the will in the child or children when that stated period had ended, thereby again precluding curtesy; or (c), lastly, she would die leaving a husband and no children, in which event by the terms of the will the estate vested, *eo instanti,* in named collateral kin, thereby, again, precluding curtesy. We thus see that the scheme of the will precluded an estate of inheritance in the wife except in a contingency that never happened. It follows, by necessary implication, that the estate of the wife was a life estate, subject to be enlarged into a fee only on the condition precedent that the husband should die first, and that if she died first, leaving children, the entire income and usufruct of the estate went to them until the estate vested in them on the youngest child attaining its majority. If then testator had said in so many words that plaintiff should not have curtesy in the land, his intent would not have been more plain than it is under a proper construction of the will, for the testator's will involved a scheme which necessarily precluded curtesy and, as said, necessarily created an equitable life estate in the wife at the outset, subject to be enlarged into a fee on the death of her husband prior to her own.

Curtesy being a common law right and therefore recognized in Missouri, where there is no statute abrogating it, the law favors it. It is primer knowledge that the essentials of such an estate are marriage, seizin of an estate of inheritance in the wife, issue born alive and death of the wife. It matters not whether the estate of inheritance be a legal or an equitable one, provided, in the latter instance, curtesy be not excluded by express words in the grant or by necessary implication. In this case the wife died not seized of an estate of inheritance. Curtesy, like dower, cannot be carved out of or predicated upon a life estate. Curtesy is an

adjunct, a derivative estate, therefore the maxims apply, viz.: If the principal be taken away, the adjunct is also taken away. The principal or primitive estate ceasing, the derivative estate also ceases (*Cessante statu primitivo, cessat derivativus*). A life estate is "a tenure to which neither dower or curtesy is incident." [Burris v. Page, 12 Mo. l. c. 361.]

The codicil refers to the 240 acres devised by Item 3 as "given to my executor for the use of my said daughter, Martha Jane Register." Some stress is laid on the words there employed. It is argued they tend to show that testator interpreted his will as giving an equitable estate of inheritance at the outset to his daughter. But we do not think they have such office. Their office, in the connection used, was merely descriptive of the 240 acres he did not want sold. The words were not intended to be operative in vesting or determining title. The title had already been vested by the principal will and there is nothing in the codicil to show that testator intended to modify his testamentary scheme in that particular. The force of the codicil was spent in another direction, viz., in changing the residuary legatee, and in putting a limitation on the donation of power to sell real estate.

Let the judgment be affirmed. All concur.